## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MAREN VARGAS, individually and on behalf of all others similarly situated, | Case No. 1:26-cv-1525 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| TEMPUS AI, INC., a Nevada corporation, | |
| Defendant. | |

Plaintiff Maren Vargas, individually and on behalf of all other persons similarly situated, by her undersigned attorneys, as and for her Class Action Complaint for violations of the Illinois Genetic Information Privacy Act ("GIPA"), 410 ILCS 513/1, *et seq.*, against Defendant Tempus AI, Inc. ("Tempus AI" or "Defendant"), allege as follows:

### I.  NATURE OF THE ACTION

1.  Plaintiff brings this action for damages and other legal and equitable remedies resulting from the illegal transfer of Illinois residents' genetic testing and information derived from genetic testing from Ambry Genetics Corporation ("Ambry Genetics") to Tempus AI. Tempus AI violated GIPA by compelling Ambry Genetics to disclose Plaintiff's and proposed Class members' genetic information to Tempus AI and by disclosing their genetic information to third parties without Plaintiff's and proposed Class members' authorization.

2.  Tempus AI is a technology health data company that uses artificial intelligence in connection with health data generated in its labs and acquired from other sources. Tempus AI contracts with researchers, pharmaceutical companies, and biotechnology companies and provides healthcare providers and researchers with datasets comprising health information and insights

derived from that data.

3.      Ambry Genetics operates as a clinical genetic testing laboratory offering diagnostic products across hereditary disease areas. Among other things, it provided hereditary cancer testing panels and rare disease testing. Ambry Genetics also emphasized the scale and reuse of its genetic evidence base—marketing "Real World Data from over 2.5 million genetic tests" and operating AmbryShare, described as "aggregated allele frequency data" spanning analysis of "all 20,000+ genes in the human genome," reflecting a large, structured collection of genetic information available for public download.

4.      In 2024, Tempus AI sought to acquire Ambry Genetics's massive database of genetic information to train its artificial intelligence algorithm and to ensure, through Ambry Genetics' genetic testing laboratory, that Tempus AI would have a continual feed of new genetic information. After months of due diligence, Tempus AI announced on February 3, 2025, that it had acquired Ambry Genetics for $375 million in cash and $225 million in shares.

5.      According to Tempus AI, the Ambry Genetics acquisition provided it "with expanded testing capabilities for inherited cancer risk" and complemented its "strategy of using data to advance clinical and scientific innovation."[1] Tempus AI also touted its plan to "incorporate" Ambry Genetics into its "large data business."[2] As part of this acquisition, Tempus AI, without the written consent or knowledge of any Ambry Genetics customer, compelled Ambry Genetics to disclose its massive trove of genetic data, including Plaintiff's genetic data.

6.      Immediately after the acquisition, Tempus AI further disclosed the genetic information obtained from Ambry Genetics to third parties without the knowledge or written consent of the individuals whose genetic information had been collected. In 2025 alone, "Tempus

---

[1] https://www.sec.gov/Archives/edgar/data/1717115/000095017024120663/tem-ex99_1.htm
[2] https://www.stockinsights.ai/us/TEM/earnings-transcript/fy24-q3-3a71

signed data agreements with over 70 customers, spanning both large and mid-sized pharma, including AstraZeneca, GlaxoSmithKline, Bristol Myers Squibb, Pfizer, Novartis, Merck, Abbvie, Daiichi Sankyo, Eli Lilly, Boehringer Ingelheim, and biotechs including Incyte, Servier, Aspera Biomedicines, and Whitehawk Therapeutics, as an increasing number of biopharma companies are incorporating Tempus' unique, multimodal dataset into their drug discovery and development efforts."[3]

7.      Plaintiff and proposed Class members have an interest in the privacy of their genetic information, including the results of their genetic testing or insights derived therefrom. Recognizing this interest, the Illinois Legislature enacted the Genetic Information Privacy Act ("GIPA"), which provides that "genetic testing and information derived from genetic testing is confidential and privileged and may be released only to the individual tested and to persons specifically authorized, in writing . . ., by that individual to receive the information." *See* 410 ILCS 513/15(a). GIPA further requires that persons or entities may not disclose or be compelled to disclose the identity of any person upon whom a genetic test is performed or the results of a genetic test in a manner that identifies the subject of the test without legal authorization. *See* 410 ILCS 513/30(a).

8.      GIPA confers on Plaintiff and all other similarly situated individuals the right to prevent such illegal transfer and disclosures of genetic information without written consent. Yet, through the acquisition of Ambry Genetics, Tempus AI compelled the disclosure of genetic information derived from genetic testing of Plaintiff and thousands of individuals without ever obtaining the requisite written consent. And, by licensing the genetic information to other businesses, Tempus AI disclosed the results of the genetic testing in a manner that permits

---

[3] https://www.tempus.com/news/tempus-achieves-record-total-contract-value-exceeding-1-1-billion/?srsltid=AfmBOooo0U8HZJ7Hc1fHAmRG7JhLqD6ok-3TRPMBdR-WN7YO8VHaMZ5H

identification of Plaintiff and proposed Class members without authorization.

9.      Plaintiff brings this action to prevent Tempus AI from further violating the privacy rights of proposed Class members and to recover damages for Tempus AI's violation of their genetic privacy rights.

## II.      JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) *et seq.*, because this case is a class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; there are greater than 100 putative Class members; at least one putative Class member is a citizen of a state other than Tempus AI's state of citizenship; and none of the exceptions under subsection 1332(d) apply to the instant action.

11.      This Court may assert personal jurisdiction over Tempus AI because it is headquartered in and conducts substantial business within Illinois and in this District.

12.      Venue is proper in this District because Plaintiff resides in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## III.      PARTIES

13.      Plaintiff Maren Vargas is, and has at all relevant times, been a resident and a citizen of Hoffman Estates, Illinois.

14.      Defendant Tempus AI is a healthcare technology company incorporated in the state of Nevada with its principal place of business at 600 West Chicago Avenue, Suite 510, Chicago, Illinois 60654. Tempus AI aims to "advance[e] precision medicine through the practical application of artificial intelligence in healthcare," boasts of having "one of the world's largest libraries of multimodal data, and an operating system to make that data accessible and useful," and provides its "AI-enabled precision medicine solutions to physicians to deliver personalized patient

care and in parallel facilitates discovery, development and delivery of optimal therapeutics."[4] On November 4, 2024, Tempus AI announced "that it ha[d] entered into an agreement to acquire Ambry Genetics, a leader in genetic testing that aims to improve health by understanding the relationship between genetics and disease."[5] On February 3, 2025, Tempus announced that it had completed its acquisition of Ambry Genetics for "$375 million in cash and $225 million in shares at closing, of which $100 million is subject to a lock-up agreement until one year post-transaction close."[6]

15.     Tempus AI makes its business decisions, including engaging in contracts with third-party pharmaceutical, health, and biotechnology companies. Tempus AI also has a laboratory in Chicago, IL, where it conducts genomic and DNA sequencing.

## IV.     FACTUAL BACKGROUND

### A.     Illinois' Genetic Information Privacy Act

16.     In 2008, Illinois enacted GIPA. In enacting GIPA, the Illinois General Assembly found that:

(1) The use of genetic testing can be valuable to an individual.

(2) Despite existing laws, regulations, and professional standards which require or promote voluntary and confidential use of genetic testing information, many members of the public are deterred from seeking genetic testing because of fear that test results will be disclosed without consent in a manner not permitted by law or will be used in a

---

[4] *Tempus Announces Preliminary Fourth Quarter and Full Year 2025 Results*, https://www.sec.gov/Archives/edgar/data/1717115/000119312526009650/d38597dex991.htm (last accessed Feb. 6, 2026).

[5] *Tempus Reports Third Quarter 2024 Results and Agreement to Acquire Ambry Genetics*, https://www.sec.gov/Archives/edgar/data/1717115/000095017024120663/tem-ex99_1.htm (last accessed Feb. 6, 2026).

[6] Tempus Completes Acquisition of Ambry Genetics, https://www.tempus.com/news/acquisition-of-ambry-genetics/?srsltid=AfmBOooRuRpxMdXgPqrS6rOLZzUn9KrJa3s00s8UDmGsZA0zlV1iTkMF (last accessed Feb. 6, 2026).

discriminatory manner.

(3) The public health will be served by facilitating voluntary and confidential nondiscriminatory use of genetic testing information.

(4) The use of electronic health record systems and the exchange of patient records, both paper and electronic, through secure means, including through secure health information exchanges, should be encouraged to improve patient health care and care coordination, facilitate public health reporting, and control health care costs, among other purposes.

(5) Limiting the use or disclosure of, and requests for, protected health information to the minimum necessary to accomplish an intended purpose, when being transmitted by or on behalf of a covered entity under HIPAA, is a key component of health information privacy. The disclosure of genetic information, when allowed by this Act, shall be performed in accordance with the minimum necessary standard when required under HIPAA. 410 ILCS 513/5.

17.    GIPA provides that "genetic testing and information derived from genetic testing is confidential and privileged and may be released only to the individual tested and to persons specifically authorized, in writing in accordance with Section 30, by that individual to receive the information." 410 ILCS 513/15(a).

18.    GIPA defines "genetic testing" as "an analysis of human DNA, RNA, chromosomes, proteins, or metabolites, if the analysis detects genotypes, mutations, or chromosomal changes." 410 ILCS 513/10 (referring to 45 C.F.R. § 160.103)[7] GIPA defines "genetic information" as "(i) [t]he individual's genetic tests; (ii) [t]he genetic tests of family

---

[7] GIPA incorporates several terms and concepts from the Privacy Rule under the Health Insurance Portability and Accountability Act (the "HIPAA").

members of the individual; (iii) [t]he manifestation of a disease or disorder in family members of such individual; or (iv) [a]ny request for, or receipt of, genetic services, or participation in clinical research which includes genetic services, by the individual or any family member of the individual." *Id.*

19.     GIPA provides that "[n]o person may disclose or be compelled to disclose the identity of any person upon whom a genetic test is performed or the results of a genetic test in a manner that permits identification of the subject of the test, except to" the subject of the test, any person designated in a specific written legally effective release of the test results executed by the subject of the test or the subject's legally authorized representative, and certain other Person's not relevant to here. 410 ILCS 513/30 ("Section 30").

20.     GIPA also provides that "[n]o person to whom the results of a test have been disclosed may disclose the test results to another person except as authorized by this Act." 10 ILCS 513/35 ("Section 35").

21.     Any covered entity "using or disclosing genetic-related information under" GIPA must "do so in accordance with the minimum necessary standard under HIPAA." 410 ILCS 513/31.10. Under HIPAA, "[t]he minimum necessary standard requires covered entities to evaluate their practices and enhance safeguards as needed to limit unnecessary or inappropriate access to and disclosure of protected health information."[8]

22.     GIPA provides "[a]ny person aggrieved by a violation of this Act … a right of action" for statutory damages ranging from $2,500 to $15,000 per violation, reasonable attorneys' fees and costs, and injunctive and other relief. 410 ILCS 513/40.

23.     As alleged herein, the illegal transfer of thousands of Illinois residents' genetic

---

[8] *Minimum Necessary Requirement*, U.S. Department of Health and Human Resources, https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/minimum-necessary-requirement/index.html (accessed Feb. 9, 2026).

information from Ambry Genetics to Tempus AI, and Tempus AI's subsequent disclosure of that genetic information to third parties without informed written consent, violated 410 ILCS 513/15(a), 410 ILCS 513/30(a), and 410 ILCS 513/35 of GIPA.

**B.    Tempus AI Compelled Ambry Genetics to Disclose Plaintiff's Genetic Information without Authorization**

24.    Defendant Tempus AI "build[s] innovative tech solutions oriented around clinical care and research products" and seeks to "bring[] data and AI to healthcare."[9] Tempus AI offers numerous AI-driven technologies to healthcare providers, including "Hub," "One," "Now," "Lens," "Pixel," "Next Pathways," "Next Trials," "Algos," and "Olivia."[10] Tempus is structured around a self-reinforcing cycle that strengthens with scale. The more tests it runs, the more data it acquires, the better its models get—and the more attractive it becomes to providers and pharmaceutical partners. In other words, Tempus uses its massive trove of data to train its AI algorithms.

25.    Thus, Ambry Genetics proved to be an attractive acquisition target for Tempus AI. Ambry Genetics is a global leader in health history and consumer genomics, operating in the USA and Canada. Ambry Genetics operates as a clinical genetic testing laboratory offering diagnostic products across hereditary disease areas. Among other things, it provides hereditary cancer testing panels and rare disease testing. Ambry Genetics also markets "Real World Data from over 2.5 million genetic tests" and operates AmbryShare, described as "aggregated allele frequency data" spanning analysis of "all 20,000+ genes in the human genome," reflecting a large, structured collection of genetic information available for public download.[11] Its massive trove of genetic data

---

[9] https://www.tempus.com/about-us/tempus-tech/
[10] https://www.tempus.com/about-us/tempus-tech/
[11] https://www.ambrygen.com/company/press-release/84/ambry-genetics-big-data-sharing-program-now-available-for-public-download; https://www.ambrygen.com/partners/pharma-services/real-world-data-services

is procured through its at-home genetic testing kit and laboratories. Specifically, customers receive at-home genetic testing kits that allow submission of blood or saliva samples. Customers of Ambry may also have genetic testing done through a health care provider. Ambry Genetics then uses a variety of testing methods to survey a person's entire genome and evaluate whether a customer has inherited genes for hereditary cancer, heart conditions, neurological conditions, or other rare conditions.

26. On November 4, 2024, Tempus AI announced it would acquire Ambry Genetics for $375 million in cash and $225 million in shares. In discussing the deal, Tempus AI touted the vast trove of genetic data it would acquire. For example, Tempus AI's CEO and Founder stated, "This acquisition complements our strategy of leveraging diagnostics and data to drive innovation, further strengthening our ability to deliver cutting-edge solutions to clinicians, patients, and life sciences companies."[12] In a Q3 2024 Earnings Call Transcript, Tempus AI's CEO described the acquisition as "synergistic across all our products," including "our Data business and our AI Applications business." And in a Q4 2024 Earnings Call Transcript, Tempus AI's CFO remarked, "We have a large data business that we can kind of incorporate Ambry into."

27. Tempus AI compelled Ambry Genetics to disclose the genetic information it had collected through the acquisition so that Tempus AI could use that data to train its AI algorithms. Tempus AI also would have compelled Ambry Genetics to disclose the genetic information during due diligence, so that Tempus AI could be assured that the genetic information was real, not manufactured.

28. On February 3, 2025, Tempus announced that it had completed its acquisition of Ambry Genetics. In direct violation of GIPA, Tempus AI compelled Ambry Genetics to disclose

---

[12] https://investors.tempus.com/news-releases/news-release-details/tempus-completes-acquisition-ambry-genetics

highly sensitive genetic information provided by individuals to Ambry Genetics, including in the course of conducting due diligence for the acquisition. This highly sensitive genetic information is now in the possession of Tempus AI—all without ever informing anyone or seeking written authorization.

29.     Tempus AI then incorporated Ambry Genetics' genetic information data into its own data set. For Example, Tempus AI noted that "both legacy Ambry and the legacy Tempus AI sequencing business live within [Tempus AI's] Genomics offering."[13] And in describing the acquisition, Ambry Genetics CEO explained: "We will be able to bring Ambry's 25-year history of leadership in variant interpretation together with Tempus's multimodal data and robust analytical systems to drive new insights for diagnosing and treating patients."[14] Tempus AI further assured its investors in February of 2025 that because "Ambry generates vast amounts of data across the ~400k patients it sequences each year," this would allow Tempus AI to "leverage this data to augment its current data offering."[15] And on October 9, 2025, Tempus AI announced that as a result of its acquisition of Ambry Genetics, it has "expanded [its] oncology dataset to include approximately 3 million genomic sequences from patients undergoing hereditary cancer testing."[16]

## C.     Tempus AI Disclosed the Genetic Information it Acquired from Ambry Genetics to Third Parties without Authorization

30.     Tempus AI also violated GIPA by disclosing the genetic information it received from the Ambry Genetics acquisition to third parties without written authorization. Tempus AI's business model centers on providing third parties with access to its trove of genetic data.[17]

---

[13] https://investors.tempus.com/static-files/4862cc66-8cdd-4877-99ab-1f09f4753d39
[14] https://www.ambrygen.com/company/press-release/152/letter-from-tom-schoenherr
[15] https://investors.tempus.com/static-files/7785f3fe-ccf4-4f86-935a-ad25a4d7f6e2
[16] https://www.tempus.com/resources/content/blog/advancing-the-frontier-of-ai-in-healthcare/?srsltid=AfmBOorc91hzhDV8XkKGnY0zSVtxctv-_-7-j0EUgTe2sNGlGuK211Su
[17] *See* https://www.sec.gov/Archives/edgar/data/1717115/000095017025105449/tem-20250630.htm ("The Company also derives revenue from the commercialization of data generated in the lab ('Data and services') through the licensing of de-identified datasets to third parties")

31.     Specifically, Tempus AI works by aggregating and collecting large amounts of health-related data, including genetic data, to commercialize the data for third parties and license it to them "to provide a series of data-related services to our life sciences customers, such as clinical trial matching, or Trials."[18]

32.     Tempus also shares its data with third parties in real time: " Our Platform connects multiple stakeholders within the larger healthcare ecosystem, often in near real time…."[19] In addition, Tempus AI's business model relies on its capacity to "license libraries of linked clinical, molecular, and imaging de-identified data," including genetic information, "and provide a suite of analytic and cloud-and-compute tools to pharmaceutical and biotechnology companies."[20] In other words, Tempus AI's ability to leverage the genetic data in its possession (including data received from the Ambry Genetics acquisition) and license or disclose that data to third parties is central to its business model.

33.     In 2025 alone, "Tempus signed data agreements with over 70 customers, spanning both large and mid-sized pharma, including AstraZeneca, GlaxoSmithKline, Bristol Myers Squibb, Pfizer, Novartis, Merck, Abbvie, Daiichi Sankyo, Eli Lilly, Boehringer Ingelheim, and biotechs including Incyte, Servier, Aspera Biomedicines, and Whitehawk Therapeutics, as an increasing number of biopharma companies are incorporating Tempus' unique, multimodal dataset into their drug discovery and development efforts."[21]

34.     For example, Tempus AI announced on April 23, 2025, a "3 year, $200 million data

---

[18] https://www.sec.gov/Archives/edgar/data/1717115/000119312524142956/d221145ds1.htm#:~:text=Tempus%20has%20built%20this%20integrated,to%20discover%20and%20develop%20therapeutics
[19] https://www.sec.gov/Archives/edgar/data/1717115/000119312524142956/d221145ds1.htm#:~:text=Tempus%20has%20built%20this%20integrated,to%20discover%20and%20develop%20therapeutics
[20] *Id.*
[21] https://www.tempus.com/news/tempus-achieves-record-total-contract-value-exceeding-1-1-billion/?srsltid=AfmBOooo0U8HZJ7Hc1fHAmRG7JhLqD6ok-3TRPMBdR-WN7YO8VHaMZ5H

licensing and modeling agreement with AstraZeneca and Pathos … to build the largest foundation model that's ever been built in oncology." Under the agreement, AstraZeneca and Pathos had access to "over 300 petabytes of data, which includes rich molecular data connected to outcomes."[22] The agreement was "non-exclusive," meaning Tempus AI "is free to license its data and build other models with other biopharma companies," which it "expect[ed] to do in the future."[23]

35.     On May 14, 2025, Tempus AI announced a "multi-year strategic collaboration with Boehringer Ingelheim" to "leverage data and AI to further advance therapeutic research and development."[24] Under the Agreement, "Boehringer will have access to Tempus' de-identified database containing molecular, clinical, and imaging data and its analytical platform, Lens."[25]

36.     On October 16, 2025, Tempus AI announced a "collaboration with Whitehawk Therapeutics" that would provide Whitehawk with Tempus' multimodal database."[26]

37.     By allowing third parties to access its database, Tempus AI discloses genetic information in its possession to third parties. This information includes Plaintiff's and proposed Class members' sensitive genetic information that Tempus AI acquired from Ambry Genetics without written authorization.

### D.     Tempus AI and Ambry's Public Claims to Only Disclose De-Identified Genetic Information are False

38.     Both Tempus AI and Ambry Genetics claim to disclose only "de-identified" genetic

---

[22] https://investors.tempus.com/static-files/4862cc66-8cdd-4877-99ab-1f09f4753d39
[23] *Id.*
[24] https://www.tempus.com/news/tempus-enters-multi-year-strategic-collaboration-with-boehringer-ingelheim-to-advance-its-cancer-pipeline/?srsltid=AfmBOoqtZcj9LYtnmtiSmVGHwoMZuDNYpSldOzD38nyMZka_175lyzb2
[25] https://www.tempus.com/news/tempus-enters-multi-year-strategic-collaboration-with-boehringer-ingelheim-to-advance-its-cancer-pipeline/?srsltid=AfmBOoqtZcj9LYtnmtiSmVGHwoMZuDNYpSldOzD38nyMZka_175lyzb2
[26] https://www.tempus.com/news/pr/tempus-announces-collaboration-with-whitehawk-therapeutics-to-advance-biomarker-driven-oncology-research/?srsltid=AfmBOooomhjU6WuhhJovpULgsvtlfaL8xaZoJx5Z7J9-Ha1UeLYRvjEp

information.[27] These carefully drafted public statements, however, do not withstand scrutiny.

39.     For example, in 2020, unauthorized bad actors breached Ambry Genetics and acquired the protected health information of 232,772 patients. Ambry Genetics knew of the identities of the patients whose information was stolen because it notified its customers that the breach entailed "[e]mails and attachments contain[ing] sensitive patient data such as names, diagnoses, and other medical information, with a subset of patients also having their Social Security numbers exposed."[28] Ambry Genetics, therefore, associated the health information in its possession with customers' identifiable information.

40.     Tempus AI's public assurances that the genetic data it discloses to third parties are "structured and de-identified, prior to commercialization" are likewise contradictory and unconvincing.[29] For instance, Tempus AI informs third parties with whom it licenses that its services would allow them to "[i]dentify[] patients and contextualize[] where they are in the care journey relative to clinical guidelines."[30] Moreover, Tempus AI boasts of delivering "precision medicine to improve patient outcomes" by "unraveling disease complexity from a complete, unified picture of the patient"—which would necessarily require the identification of a unique patient.[31]

41.     Regardless of Ambry Genetics and Tempus AI's statements otherwise, genetic information cannot be de-identified because it is a biomarker unique to each individual.[32] GIPA

---

[27] https://www.sec.gov/Archives/edgar/data/1717115/000119312525189854/d14762d424b7.htm;
https://www.ambrygen.com/legal/notice-of-privacy-practices
[28] https://www.hipaajournal.com/ambry-genetics-settles-class-action-data-breach-lawsuit-for-12-25-million/
[29] https://www.sec.gov/Archives/edgar/data/1717115/000119312525189854/d14762d424b7.htm
[30] https://www.tempus.com/about-us/tempus-tech/
[31] https://investors.tempus.com/static-files/7785f3fe-ccf4-4f86-935a-ad25a4d7f6e2
[32] *See* Policy Statement of the Federal Trade Commission on Biometric Information and Section 5 of the Federal Trade Commission Act,
https://www.ftc.gov/system/files/ftc_gov/pdf/p225402biometricpolicystatement.pdf (noting "[b]iometric information includes … genetics.")

defines "[d]e-identified information" as "health information that is not individually identifiable as described under HIPAA, as specified in 45 CFR 164.514(b)." Under HIPAA, health information can only be de-identified by "1) a formal determination by a qualified expert; or 2) the removal of specified individual identifiers as well as absence of actual knowledge by the covered entity that the remaining information could be used alone or in combination with other information to identify the individual."[33] *See* 45 CFR 164.514(b). One of those identifiers is "biometric identifiers." 45 CFR 164.514(b)(2)(i)(P).

42.     DNA and genetic information are inherently identifiable. "DNA …. [is] considered unique to the individual data subject, and regardless of whether the labels are stripped away, they still contain identifying information.[34] Indeed, "DNA is inherently unique to the individual …. Even without a name or phenotype linkage, DNA includes many clues for narrowing the identity possibilities—and it can be obtained from objects as ubiquitous as discarded coffee cups."[35] And according to the National Institute of Health, even purportedly "de-identified" genomic data can be "re-identified."[36]

### E.     Ambry Genetics Collected Plaintiff's Genetic Information

43.     In or around August 2023, Plaintiff Maren Vargas had genetic testing done through Ambry Genetics.

44.     After Plaintiff Vargas's blood sample was sent to Ambry Genetics, her genetic material was sequenced by Ambry Genetics, which then provided her with information derived from her genetic test, including any predisposition to certain genetic disorders.

---

[33] https://www.hhs.gov/hipaa/for-professionals/special-topics/de-identification/index.html#:~:text=As%20discussed%20below%2C%20the%20Privacy,used%20to%20identify%20an%20individual.

[34] *See* https://iapp.org/news/a/inherently-identifiable-is-it-possible-to-anonymize-health-and-genetic-data

[35] https://www.nationalacademies.org/read/21707/chapter/4#20

[36] https://www.nationalacademies.org/read/21707/chapter/4

45.     Plaintiff Vargas never consented, agreed or gave permission—written or otherwise—to Ambry Genetics to disclose her genetic testing and information derived from genetic testing to Tempus AI or any other third party, nor did Plaintiff Vargas ever consent to having her genetic information used to train AI models or build AI applications.

46.     Nor did Plaintiff Vargas consent, agree, or give permission—written or otherwise—to Tempus AI to commercialize or disclose her genetic testing and information derived from genetic testing to Tempus AI or any other third party.

47.     By compelling disclosure of Plaintiff's highly sensitive genetic testing and information derived from genetic testing, without her consent, written or otherwise, Tempus AI invaded Plaintiff's statutorily protected right to privacy, in direct violation of GIPA.

48.     Tempus AI also violated GIPA and Plaintiff's right to privacy by disclosing information derived from Plaintiff's genetic testing to unauthorized third parties, including businesses with whom Tempus AI licenses its data.

## V.     CLASS ALLEGATIONS

49.     Plaintiff brings this action on behalf of herself, and all others similarly situated as a class action under Rules 23(a), (b)(1) (b)(2), (b)(3), and (c)(4) of the Federal Rule of Civil Procedure, on behalf of the following proposed classes (the "Class" and Subclass (collectively, the "Classes"):

50.     **Nationwide Class.** All individuals who had their genetic testing and information derived from genetic testing obtained by Tempus AI through the Ambry Genetics transaction and whose information was subsequently disclosed by Tempus AI to third parties.

51.     **Illinois Subclass**. All Illinois residents who had their genetic testing and information derived from genetic testing obtained by Tempus AI through the Ambry Genetics transaction and whose information was subsequently disclosed by Tempus AI to third parties.

52. Excluded from the Classes are Tempus AI and Ambry Genetics, their past or current officers, directors, affiliates, legal representatives, predecessors, successors, assigns, and any entity in which any of them have a controlling interest, as well as all judicial officers assigned to this case as defined in 28 USC § 455(b) and their immediate families.

53. <u>Numerosity</u>. Members of the proposed Classes are so numerous and geographically dispersed that joinder of all members is impracticable. Plaintiff believes that there are thousands of members of the proposed Classes. It is, therefore, impractical to join each member as a named Plaintiff. Further, the size and relatively modest value of the individual members' claims render joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of the litigation. Moreover, the proposed Classes are ascertainable and identifiable from Defendant's records.

54. <u>Typicality</u>. Plaintiff's claims are typical of the claims of members of the proposed Classes. Plaintiff and members of the proposed Classes were harmed by the same wrongful conduct by Tempus AI in that (i) Tempus AI compelled their genetic testing and information derived from genetic testing to be disclosed by Ambry Genetics to it without obtaining express written consent, and (ii) Tempus AI disclosed their genetic testing and information derived from genetic testing acquired from Ambry Genetics without obtaining express written consent. Plaintiff's claims are based on the same legal theories as the claims of other proposed Classes' members.

55. <u>Adequacy</u>. Plaintiff will fairly and adequately protect and represent the interests of the members of the proposed Classes. Plaintiff's interests are coincident with, and not antagonistic to, those of the members of the proposed Classes. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the proposed Classes and will vigorously pursue those claims. Plaintiff is represented by counsel with experience in the prosecution of class action litigation generally and in the emerging field of privacy litigation

specifically.

56.    Commonality. Questions of law and fact common to the members of the proposed Classes predominate over questions that may affect only individual members of the proposed Classes because Tempus AI has acted on grounds generally applicable to the proposed Classes. Such generally applicable conduct is inherent in Tempus AI's wrongful conduct. Questions of law and fact common to the proposed Classes include:

(a)    whether Tempus AI compelled disclosure of Plaintiff's and the proposed Classes' genetic testing and information derived from genetic testing without written authorization;

(b)    whether Tempus AI disclosed Plaintiff's and the proposed Classes' genetic testing and information derived from genetic testing without written authorization;

(c)    whether Tempus AI's conduct is subject to GIPA;

(d)    whether Tempus AI properly informed Plaintiff and members of the proposed Classes that it obtained their genetic testing and information derived from genetic testing;

(e)    whether Tempus AI obtained a written release (as defined in 410 ILCS 513/15) to obtain Plaintiff's and members of the proposed Classes' genetic testing and information derived from genetic testing;

(f)    whether Tempus AI's violations of GIPA were committed intentionally, recklessly, or negligently; and

(g)    whether Plaintiff and the proposed Class are entitled to damages and/or other equitable relief.

57.    Superiority. Class action treatment is a superior method for the fair and efficient

adjudication of the controversy. Such treatment will permit a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweighs potential difficulties in management of this class action. The prosecution of separate actions by individual members of the proposed Classes would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for Defendant. The prosecution of separate actions by individual members of the proposed Classes would create a risk of adjudications that would, as a practical matter, be dispositive of the interests of other members of the proposed Classes not parties to the adjudications, or would substantially impair or impede their ability to protect their interests. Moreover, Tempus AI has acted or refused to act on grounds generally applicable to the proposed Classes, making injunctive and corresponding declaratory relief appropriate with respect to the proposed Classes as a whole. And the claims of members of the proposed Classes comprise of common issues whose resolution in a class trial would materially advance this litigation. Plaintiff knows of no special difficulty to be encountered in litigating this action that would preclude its maintenance as a class action. Class-wide relief is essential to compliance with GIPA.

## VI. CAUSE OF ACTION

### COUNT I
### Violation of the Illinois Genetic Information Privacy Act, 410 ILCS 513/1, *et seq*.
### (On behalf of Plaintiff and the Nationwide Class and Illinois Subclass)

58.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

59.     Tempus AI is a public corporation and thus qualifies as a "person" under GIPA. *See* 410 ILCS 513/10.

18

60.     Section 15 of GIPA mandates that "genetic testing and information derived from genetic testing is confidential and privileged and may be released only to the individual tested and to persons specifically authorized, in writing in accordance with Section 30, by that individual to receive the information." *See* 410 ILCS 513/15(a).

61.     Section 30 of GIPA provides that "[n]o person may disclose or be compelled to disclose the identity of any person upon whom a genetic test is performed or the results of a genetic test in a manner that permits identification of the subject of the test, except to" (i) the subject of the test or the subject's legally authorized representative, (ii) any person designated in a specific written legally effective authorization for release of the test results and certain other persons not relevant here. *See* 410 ILCS 513/30.

62.     And Section 35 of GIPA prohibits any "person to whom the results of a test have been disclosed [from disclosing] the test results to another person except as authorized under this Act." *See* 410 ILCS 513/35.

63.     Tempus AI failed to comply with GIPA's mandates in Sections 15, 30, and 35 to keep Plaintiff's and members of the proposed Classes genetic tests, and information derived from those tests, confidential without express authorization. Tempus AI also failed to comply with GIPA's Section 30 prohibition against compelling the disclosure of genetic tests and information derived from those tests.

64.     Plaintiff and the members of the proposed Classes are individuals who provided genetic testing and information derived from genetic testing to Ambry Genetics. Defendant Tempus AI, through its acquisition of Ambry Genetics, compelled disclosure and obtained Plaintiff's and members of the proposed Classes genetic testing, and information derived from genetic testing, as explained in detail above. Defendant Tempus AI also violated GIPA by disclosing Plaintiff's members of the proposed Classes identities and/or genetic testing and

information to third parties. Defendant Tempus AI failed to obtain written authorization from Plaintiff or members of the proposed Classes to obtain their genetic testing and information derived from genetic testing, as required by GIPA.

65.     Tempus AI's violations of GIPA, as set forth herein, were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Tempus AI negligently failed to comply with GIPA.

66.     On behalf of herself and the proposed Classes, Plaintiff seeks: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the proposed Classes by requiring Tempus AI to comply with GIPA's requirements; (2) statutory damages of $15,000 for each intentional and/or reckless violation of GIPA pursuant to 410 ILCS 513/40(a)(2) or, in the alternative, statutory damages of $2,500 for each negligent violation of GIPA pursuant to 410 ILCS 513/40(a)(1); and reasonable attorneys' fees and costs and other litigation expenses pursuant to 410 ILCS 513/40(a)(3).

## VII.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff Maren Vargas, on behalf of herself and the proposed Classes, respectfully requests that this Court enter an Order:

A.     Certifying this case as a class action on behalf of the Classes defined above, appointing Plaintiff Vargas  as a representative of the Classes, and appointing her counsel as Class Counsel;

B.     Declaring that Defendant's actions, as set out above, violate GIPA, 410 ILCS 513/1, *et seq*.;

C.     Awarding statutory damages of $15,000.00 for each and every intentional and/or reckless violation of GIPA pursuant to 410 ILCS 513(40)(a)(2), or alternatively, statutory damages of $2,500.00 for each and every violation pursuant to 410 ILCS

513(40)(a)(1) if the Court finds that Defendant's violations were negligent;

D.    Awarding injunctive and other equitable relief as is necessary pursuant to 410 ILCS

513(40)(a)(4) to protect the interests of the Classes;

E.    Awarding Plaintiff and the Classes their reasonable attorneys' fees and costs and

other litigation expenses, pursuant to 410 ILCS 513/40(a)(3);

F.    Awarding Plaintiff and the Classes pre- and post-judgment interest, to the extent

allowable; and

G.    Awarding such other and further relief as equity and justice may require.

## VIII.   JURY TRIAL DEMANDED

Plaintiff demands a trial by jury for all issues so triable.


Dated: February 10, 2026                    Respectfully submitted,

                                            */s/ Gary M. Klinger*

                                            Gary M. Klinger (ARDC # 6303726)
                                            William J. Edelman (ARDC # 6332368)
                                            Michael A. Acciavatti (ARDC # 6352082)
                                            **MILBERG, PLLC**
                                            227 W. Monroe Street, Suite 2100
                                            Chicago, Illinois 60606
                                            Telephone: (866) 525-0878
                                            gklinger@milberg.com
                                            wedelman@milberg.com
                                            macciavatti@milberg.com

                                            *Attorneys for Plaintiff and the Proposed
                                            Class*